## 36710. WALLACE v. THE STATE.

NICHOLS, Justice.

James Michael Wallace appeals his convictions for armed robbery and murder, for which he received, respectively, sentences of twenty years and life imprisonment. The state had sought the death penalty.

The jury heard evidence authorizing the following to be found as facts beyond a reasonable doubt: Wallace entered the offices of Savannah Steel Company and asked for a job. He was told by Ms. Steele, the company secretary-bookkeeper, that the company was not hiring. He left and returned a short while later carrying a .22 caliber rifle, with which he shot and fatally wounded Jerry Bragg, an employee of Savannah Steel, who was standing nearby, and who told Wallace to put his gun down. He then forced Ms. Steele to give him $200.00 from the company's safe.

Two detectives of the Savannah Police Department were looking for a person matching the description of the robber-assailant. They observed Wallace driving a vehicle, followed him in their

---

unmarked car, and confronted him, identifying themselves as police officers. Wallace backed his vehicle towards the detectives, and each detective fired one shot. Wallace drove away, then abandoned his vehicle and fled on foot. He was apprehended by a third detective. Ms. Steele and Douglas Richardson, who also was present at Savannah Steel Company during the robbery and shooting, identified Wallace in a lineup.

The state introduced evidence establishing that a few minutes before the robbery and shooting at Savannah Steel Company, Wallace had entered the business premises of the nearby Atlantic Supply Company and asked whether there were any job openings. Upon being told that there were no openings, he had left and had returned just seconds later brandishing a .22 caliber rifle and demanding money. He had taken $3.00 from the pocketbook of the company secretary-bookkeeper, Sandy Poythress, $25.00 from a box, and $20.00 from John Finke, the owner of Atlantic Supply Company. He had fired the rifle in Finke's direction, then had left. Finke gave a description of Wallace to the police, later identified him in a lineup, and testified that he had no doubts whatsoever that Wallace was the man who had robbed his business the day in question.

Jerry Findley, a fingerprint expert, testified that fingerprints taken from Atlantic Supply Company were Wallace's. Wallace was convicted in the present case for armed robbery at Savannah Steel Company. Evidence as to the armed robbery at Atlantic Supply Company was introduced solely to show motive, scheme, intent, or bent of mind because the Atlantic Supply Company case was tried separately.

Wallace testified in his own behalf that he never had been to either business establishment. His defense was alibi. He sought to explain his flight from the detectives by testifying that he did not know who was shooting at him.

The foregoing evidence supports the jury's verdict under the current legal standard. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LEd2d 560) (1979); *Hardy v. State,* 245 Ga. 272, 280 (264 SE2d 209) (1980); *Whitaker v. State,* 246 Ga. 163, 168 (269 SE2d 436) (1980).

1. Wallace first contends that introducing into evidence the testimony about the armed robbery at Atlantic Supply Company put his character in evidence contrary to the principles stated in *Cawthon v. State,* 119 Ga. 395 (46 SE 897) (1903). The state replies that this evidence properly was admitted for the purpose of showing identity, motive, plan, scheme, bent of mind and course of conduct. *Hamilton v. State,* 239 Ga. 72 (235 SE2d 515) (1977).

There was evidence that Wallace was the perpetrator of the

independent crime. John Finke, the owner of Atlantic Supply Company, identified Wallace as the person who had robbed his company at gunpoint on the date in question. Jerry Findley of the Savannah Police Department testified that Wallace's fingerprints were left at the scene of the Atlantic Supply Company armed robbery. Also, there is sufficient similarity or logical connection between the independent crime (the Atlantic Supply Company armed robbery) and the offense charged (the Savannah Steel Company armed robbery) that proof of the former tended to prove the latter. The two businesses are located on the same road only minutes apart by automobile travel. The two armed robberies happened only a few minutes apart on the same day. In both instances, the perpetrator entered the business premises, asked for employment, was told that the company was not hiring, left and returned immediately armed with a .22 caliber rifle, and robbed the business and its owner or employees at gunpoint. The conditions of admissibility stated in *French v. State,* 237 Ga. 620, 621 (229 SE2d 410) (1976), are satisfied. The trial court charged the jury on the limited purposes for which the evidence was admitted. *McClesky v. State,* 245 Ga. 108, 114 (6) (263 SE2d 146) (1980). The first enumeration of error is without merit.

2. Wallace next contends that the state impermissibly commented on his post-arrest silence in violation of Doyle v. Ohio, 426 U. S. 610 (96 SC 2240, 49 LEd2d 91) (1976). Wallace asserts that this Doyle violation occurred twice during examination of Detective Wedlock, the investigating officer on the Atlantic Supply Company case. On cross examination by defense counsel, Detective Wedlock testified that Wallace had not remained silent; rather, that he had denied involvement in the Atlantic Supply Company armed robbery. Defense counsel then inquired whether Wallace ever made *another* statement to Wedlock, to which Wedlock replied that Wallace had not given him another statement. Defense counsel pressed on: "Q. So his only statement to you is that he was not involved. A. Yes, sir, but I might add, sir, he never gave me an alibi where he was on the day in question." Defense counsel moved for a mistrial but did not ask for curative instructions. Later, during redirect examination by the state, Detective Wedlock responded to the question of whether Wallace had told him where Wallace was on the day of the Atlantic Supply Company armed robbery by stating, "He didn't tell me nothing, sir." Defense counsel again moved for a mistrial but did not seek curative instructions.

The Doyle case is factually distinguishable and is not implicated in the present case. Doyle, himself, was under cross examination by the state as to his involvement in the crime charged. In the present

case, an investigating officer was under cross examination by defense counsel as to Wallace's involvement in a separate and independent crime. Doyle had elected to remain silent. Wallace had elected to speak. Wallace had denied his involvement in the separate crime. The line of inquiry on direct and cross examination was as to what Wallace had said when he had denied his involvement. The answer in both instances was that Wallace had denied his involvement but had not stated where he was on the day in question. By denying his involvement, Wallace necessarily took the position that he was elsewhere. Questions seeking to determine where he said he was were comments on his election to speak, if they were comments at all. Furthermore, the state did not initiate the line of inquiry. Defense counsel opened the door to the line of inquiry by pressing on past the point at which the officer had stated that Wallace had spoken and had denied his involvement. The second enumeration of error is without merit. *Burney v. State,* 244 Ga. 33, 38 (4) (257 SE2d 543) (1979).

3. Wallace contends that five jurors were excused improperly under Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LEd2d 776) (1967). A reading of the voir dire examination of these persons reveals no violation because each testified that under no circumstances, regardless of the facts or circumstances of the case, would he impose the death penalty. 391 U. S. at 522, fn. 21; *Hamilton v. State,* 244 Ga. 145 (259 SE2d 81) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); and *Willis v. State,* 243 Ga. 185 (253 SE2d 70) (1979). Furthermore, Wallace may not raise a Witherspoon issue on appeal because he was sentenced to life imprisonment rather than death. 391 U. S. at 523, fn. 21; *Smith v. State,* 235 Ga. 620, 621 (5) (221 SE2d 41) (1975); *Pless v. State,* 231 Ga. 228 (2) (200 SE2d 897) (1973); *Fountain v. State,* 228 Ga. 306 (2) (185 SE2d 62) (1971). The third enumeration of error is without merit.

4. Wallace contends that the trial court erred by refusing to excuse for cause a juror who stated that at the time he read the newspaper accounts of the two armed robberies he believed they were committed by the same person. The juror did not state that he continued in that belief or that he believed at the time of trial that the defendant was the perpetrator. Defense counsel interposed an objection to the juror before the prosecuting attorney could ask whether or not the person had formed a fixed opinion as to the guilt or innocence of the defendant from his exposure to the pretrial publicity and whether he could lay aside any such opinion and render verdict based upon the evidence. *Dampier v. State,* 245 Ga. 427, 431 (1) (265 SE2d 565) (1980). The trial court overruled the objection and the defense immediately exercised a peremptory strike. No error has

been made to appear. The transcript does not show that the juror entertained at the time of the voir dire any opinion regarding the defendant's involvement or guilt.

5. Wallace contends in support of his fifth enumeration of error that the court erred in denying his request for a recharge on burden of proof. The essence of the request was that the court should have charged the jury that before they could consider the evidence of the independent crime (the Atlantic Supply Company armed robbery) they were required to find beyond a reasonable doubt that the defendant committed the independent crime.

The court charged the jurors that no person shall be convicted of a crime unless each element of the crime is proved beyond a reasonable doubt. Code Ann. § 26-501. The court limited the jury's consideration of the evidence about the Atlantic Supply Company armed robbery to the narrow purpose of illustrating the defendant's state of mind or tending to establish his identity.

The independent crime (the Atlantic Supply Company armed robbery) was not an element of the offense charged (the Savannah Steel Company armed robbery) requiring its proof beyond a reasonable doubt. Rather, the evidence of the independent crime was offered and received as an evidentiary aid to the triers of the fact as tending to establish the identity of the accused and his state of mind. See Division 1 of this opinion. The fifth enumeration of error is without merit.

6. There is no merit in the contention that the trial court abused his discretion in refusing to allow the court reporter to read to the jury portions of the defendant's and his uncle's testimony. *Person v. State,* 235 Ga. 814 (3) (221 SE2d 587) (1976).

*Judgment affirmed. All the Justices concur.*

SUBMITTED SEPTEMBER 26, 1980 — DECIDED NOVEMBER 5, 1980 — REHEARING DENIED NOVEMBER 25, 1980.

*G. Terry Jackson,* for appellant.

*Andrew J. Ryan, III, District Attorney, Robert M. Hitch, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General,* for appellee.